**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Lauren Medley,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-01842-PHX-JJT

**ORDER**

At issue is the denial of Plaintiff Lauren Medley's Application for Disability Insurance by the Social Security Administration (SSA) under the Social Security Act. Plaintiff has filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 7, Pl. Br.), Defendant Social Security Administration Commissioner's Responsive Brief (Doc. 9, Resp.), and Plaintiff's Reply (Doc. 10, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 6, R.) and now affirms the Administrative Law Judge's (ALJ) decision (R. at 21–35) as upheld by the Appeals Council (R. at 1–4).

## I. BACKGROUND

Plaintiff filed an application for Disability Insurance benefits on May 17, 2022, alleging a disability beginning January 29, 2021. (R. at 21.) Plaintiff's claims were denied initially on November 22, 2022, and again upon reconsideration on May 1, 2023. (R. at 21.) Plaintiff then testified at a hearing before an ALJ on October 11, 2023. (R. at 247–74.) On March 25, 2024, the ALJ denied Plaintiff's Application. (R. at 21–35.) The Appeals

Council denied a request for review of the ALJ's decision on April 8, 2025, rendering the ALJ's opinion the final agency decision. (R. at 1–4.)

In his decision, the ALJ found that Plaintiff has severe impairments of generalized anxiety disorder, major depressive disorder, and post-traumatic stress disorder (PTSD). (R. at 23.) After review of the evidence, the ALJ determined Plaintiff's Residual Functional Capacity (RFC) qualified her for work in the national economy, such that she is not disabled under the Act. (R. at 34–35.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically

determinable physical or mental impairment. 20 C.F.R. § 416.920(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises the following arguments for the Court's consideration: (1) the ALJ did not sufficiently explain the reasons for discounting the opinion of examining psychologist Brent B. Geary, Ph.D., or support those reasons with substantial evidence in the record; (2) the ALJ rejected Plaintiff's testimony without clear and convincing reasons supported by substantial evidence; (3) the ALJ rejected lay witness testimony without giving specific, germane reasons; and (4) the ALJ relied on an incomplete hypothetical to the Vocational Expert (VE) to make the disability determination. (Pl. Br. at 1–2.) The Court now examines these in turn.

### A. Medical Opinions and VE Hypothetical

Plaintiff challenges the ALJ's assessment of the opinion of Dr. Geary, who reviewed Plaintiff's treatment records and examined her on September 9, 2022.[1] (Pl. Br. at 7–13; 681–701.)

The Ninth Circuit no longer accords special deference to a treating or examining physician. *Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022). In 2017, the Social

---

[1] Dr. Geary completed the Mental Residual Functional Capacity Assessment forms on October 1, 2022. (R. at 690–701.)

Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[ ] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2), (c). Moreover, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the revised regulations. *Woods*, 32 F. 4th at 790. Nonetheless, in rejecting a treating or examining doctor's opinion as unsupported or inconsistent, an ALJ must provide an explanation—that is, reasons—supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

From his September 9, 2022 examination of Plaintiff, Dr. Geary noted that Plaintiff reported she is frequently in a depressed mood and has social anxiety and PTSD symptoms. (R. ta 683–84.) In cognitive testing, Plaintiff exhibited an IQ "in the upper half of the low average range" but her Verbal Comprehension and Perceptual Reasoning Indexes were "in the middle of the average range." (R. at 685.) Dr. Geary concluded that Plaintiff has moderately severe or severe limitations in portions of all four of the mental functional capacity areas, including understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (R. at 690–91.)

The ALJ did not find Dr. Geary's opinion persuasive because it was not supported by Dr. Geary's examination of Plaintiff and her records, nor was it consistent with

Plaintiff's medical treatment record. (R. at 33.) The ALJ noted that Dr. Geary's assessment was largely based on Plaintiff's subjective reports in the examination; by contrast, the ALJ cited portions of Plaintiff's treatment records showing she is generally "functioning normally" apart from exhibiting a sad or depressed mood and feeling anxious. (R. at 33.) As for anxiety and depression, the ALJ noted that, when seeing Psychiatric Nurse Practitioner Michelle Onacki over the course of years, Plaintiff consistently stated those conditions improved significantly with medication, including on Lexapro (2020), Wellbutrin (2021), and Abilify (2022). (R. at 30–31, 33 (citing R. at 539, 542, 544, 547, 966).) The ALJ thus concluded that "Dr. Geary's conclusions from a one time visit [are] not consistent [with] years of assessments by the claimant's treating professional, and thus, his conclusions are not persuasive." (R. at 33.) Moreover, as for any cognitive difficulties, Dr. Geary's assessment was inconsistent with the treatment notes of Nurse Onecki and an evaluation by Psychiatric Nurse Practitioner Kari Coelho, conducted a month or so after Dr. Geary's evaluation, in which Plaintiff scored 29 out of 30 on a mental status examination, which Nurse Coelho stated "appear[s] to be an accurate reflection of [Plaintiff's] current level of functioning." (R. at 33 (citing R. at 702–07).)[2]

Nurse Coelho examined Plaintiff on November 16, 2022, and, while largely noting that Plaintiff experiences the same effects of the same mental conditions as Dr. Geary, she concluded that Plaintiff has only mild limitations in the mental functional capacity areas, except that she has moderate limitations in the ability to interact appropriately with the public and respond appropriately to usual work situations and to changes in a routine work setting. (R. at 706–07.) Like Dr. Geary's evaluation, the ALJ noted that Nurse Coelho's evaluation was made upon a one-time examination of Plaintiff. (R. at 31–33.) The ALJ found her evaluation to be partially persuasive, limited only by her lack of the use of specific functional terms. (R. at 33.)

[2] Plaintiff would have the Court weigh the value of Dr. Geary's mental status examination against Nurse Coelho's (Pl. Br. at 12–13), but it is the province of the medical care providers to decide which test is appropriate and the province of the ALJ to weigh the evidence. Plaintiff does not convince the Court to discount Nurse Coelho's evaluation as a matter of law; indeed, the ALJ satisfactorily discussed both supportability and consistency in finding Nurse Coelho's opinion partially persuasive. (R. at 32–33.)

Along with Nurse Coelho's opinion, the ALJ also found the opinions of the state agency medical consultants, Crisobal Eblen, Ph.D., and Dr. McMaster, to be partially persuasive, again limited only by their lack of the use of specific functional terms. (R. at 32.) From Plaintiff's treatment records, these doctors opined that she has mild limitations in understanding, remembering or applying information and adapting or managing oneself, and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. (R. at 32.) The ALJ found these conclusions to be consistent with the record and supported by the medical evidence. (R. at 32.) Subsequently, Dr. Geary wrote a letter responding to these doctors' assessments, but the ALJ found that, beyond explaining the possibility of limitations in a case like Plaintiff's, Dr. Geary's response did not adequately explain his prior findings that Plaintiff has moderately severe to severe limitations in all mental functional areas or provide citations to the treatment record as support for such findings; moreover, the ALJ found Dr. Geary's response to be inconsistent with evidence of Plaintiff's daily life activities. (R. at 33; 968–69.)

Plaintiff complains that the ALJ did not explain or sufficiently support his weighing of Dr. Geary's opinion, but the Court disagrees. The ALJ pointed to specific evidence in the record, including Plaintiff's treatment notes and the notes of an examining nurse practitioner taken around the same time as Dr. Geary's opinion. (R. at 29–34.) The ALJ adequately covered supportability factors, and the ALJ pointed to portions of the record to show general consistency of Plaintiff's mental assessments over the course of Plaintiff's treatment, but the inconsistency of Dr. Geary's opinion with the balance of the medical record. (R. at 33.) In contrast to the assessment of Dr. Geary, the ALJ found persuasive value in the assessments of the state agency reviewing doctors and Nurse Coelho, explaining that they were consistent with the greater medical record. (R. at 32–33.)

The ALJ's role is to holistically consider the medical evidence and resolve any contradictions, determining the weight to give to each medical opinion. 20 C.F.R. §§ 404.1527(c)(2)–404.1527(c)(6). In an instance such as this, where an examining doctor's assessment indicates more mental impairment than other assessments, the ALJ

must simply give sufficient reasons supported by substantial evidence for resolving the discrepancies and reaching his conclusions. Because the ALJ met that standard here, the Court will not disturb the ALJ's conclusions. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." (internal citation omitted)). That is, it is not the Court's role to "reweigh the evidence or substitute [its] own judgment for that of the ALJ." *Ahearn v. Saul*, 988 F.3d 1111, 1115–16 (9th Cir. 2021).

In sum, the Court finds no material error in the ALJ's evaluation of the medical evidence. Considering all the evidence, the ALJ concluded that Plaintiff's mental impairments can be accommodated by limiting Plaintiff to simple instructions, decisions, and tasks with only occasional contact with coworkers and the public and only simple changes in the work environment. (R. at 24–27, 270–71.) The Court also finds the RFC formulated by the ALJ adequately accounted for his conclusions, and the hypothetical posed to the VE reflected that. (R. at 270–71.)

**B. Symptom and Lay Witness Testimony**

Plaintiff also argues the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective testimony (Pl. Br. at 13–18), or specific, germane reasons for discounting the testimony of Plaintiff's husband (Pl. Br. at 18–19.)

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). For example, "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the ALJ may properly consider that the

medical record lacks evidence to support certain symptom testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.*

Here, both Plaintiff and her husband testified that she has multiple limitations on account of anxiety, depression, and PTSD. (R. at 258–69, 383–89, 411–19.) The ALJ concluded that while Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms, Plaintiff's statements about the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 28.) For example, as noted *supra*, the ALJ noted that Plaintiff reported significant improvement to her depressed mood and anxiety when taking medications in treatment notes from 2020 to 2022. (R. at 30–31.) The ALJ also observed that Plaintiff "is raising her daughters from infancy (diapers, feeding, bath)," "is the guardian of her impaired brother," and "socializes with family, goes camping, manages her finances, and goes shopping." (R. at 32–33.) Although there is not a complete correlation between some of Plaintiff's activities of daily life and the functional capacity required to work, the ALJ properly relied on Plaintiff's reports of activities to find inconsistency in her symptom testimony and conclude she is not as limited as she reported. *See Smartt v. Kijakazi*, 53 F. 4th 489, 498 (9th Cir. 2022). And the ALJ noted that the objective treatment records also did not corroborate her reports of limitations because she never reported many of the limitations, such as occasionally being bedridden, to the Psychiatric Nurse Practitioners. (R. at 33.)

The ALJ provided adequate specific and clear reasons for discounting Plaintiff's testimony, and—like the ALJ's evaluation of the medical evidence—the reasons were sufficient for the Court not to disturb them. *See Batson*, 359 F.3d at 1196

Plaintiff also argues the ALJ improperly weighed the testimony of Plaintiff's husband, a lay witness. (Pl. Br. at 18–19.) "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*

*v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir.2006). If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). Further, the reasons "germane to each witness" must be specific. *Stout*, 454 F.3d at 1054.

The ALJ identified similar reasons for discounting Plaintiff's husband's testimony as those for discounting Plaintiff's testimony. (R. at 34.) Primarily, the ALJ pointed out the numerous activities Plaintiff participates in that undercut the level of limitations she claims. (R. at 34.) This is an adequate reason to discount Plaintiff's husband's testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

In the absence of finding material error on the part of the ALJ, the Court will affirm the ALJ's decision.

**IT IS THEREFORE ORDERED** affirming the March 25, 2024 decision of the ALJ (R. at 21–35), as affirmed by the Appeals Council (R. at 1–4).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and close this case.

Dated this 29th day of September, 2026.

Honorable John J. Tuchi
United States District Judge